IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

v.                                                    No. CIV 05-1208 JC/LFG
                                                     No. CR 02-1813 JC

KNOWLINGTON O. BURBAGE,

    Defendant/Movant.

## MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDED DISPOSITION[1]

### Findings

1.     On November 17, 2005, Movant Knowlington O. Burbage ("Burbage") filed a motion under § 2255 to vacate, set aside, or correct sentence, along with a supporting memorandum of law and exhibits. [Doc. Nos. 1, 2.] In his § 2255 application, Burbage asserts three claims, primarily arguing that his conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure. [Doc. No. 1.] More specifically, Burbage asserts that the trial court erred in denying his motion to suppress evidence and in finding that Burbage had abandoned his backpack during an encounter with DEA agents on an Amtrak train. He further contends that the prosecution

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

unlawfully relied on perjured testimony of a DEA agent and that the government engaged in prosecutorial misconduct by relying on contrary theories during the criminal proceedings. Burbage contends that his Fourth Amendment and Due Process rights were violated and that, therefore, his conviction should be vacated. Alternatively, he requests that the case be remanded for re-sentencing before an impartial judge. [Doc. Nos. 1, 2, 8.]

    2.    On February 2, 2006, the United States filed its response to Burbage's § 2255 motion. [Doc. No. 5.] The government asserts that the issues involving the abandoned backpack and allegations of perjury were already addressed and rejected by the Tenth Circuit Court of Appeals. United States v. Burbage, 365 F.3d 1174, 1178, 1179 (10th Cir.), *cert. denied*, 543 U.S. 993 (2004). The government further contends that any argument that the prosecutor in this case violated Burbage's rights was not raised on direct appeal and may not be raised now on collateral appeal. [Doc. No. 5.] Thus, the government argues that none of the claims are sufficient to warrant relief under § 2255 and that Burbage's motion should be denied.

    3.    On February 21, 2006, Burbage filed a motion requesting he be allowed to amend his § 2255 petition. [Doc. No. 6.] The Court permitted Burbage to file an amended petition or a supplemental brief. [Doc. No. 7.] On April 17, 2006, Burbage filed what he identified as a pleading amending his § 2255 petition and reply. [Doc. No. 8.] On April 27, 2006, the government filed a response to the amended petition but stated that it stood by its prior response because Burbage's amended pleading or reply did not present any new claims or arguments. [Doc. No. 9.]

    4.    In making its recommendation on this matter, the Court examined all of the pleadings and attachments in this civil matter, along with pleadings in the criminal case and transcripts of the suppression hearing, trial, and sentencing proceedings. After carefully considering the pleadings,

attachments, argument by the parties and the pertinent law, the Court recommends that Burbage's § 2255 petition be denied. Because it is possible to resolve the issues on the pleadings, and the record establishes conclusively that Burbage is not entitled to relief, the Court concludes that no evidentiary hearing is necessary. *See* 22 U.S.C. § 2255; United States v. Kennedy, 225 F.3d 1187, 1193 (10th Cir. 2000), *cert. denied,* 532 U.S. 943 (2001).

## Background

5. On September 20, 2002, DEA agents boarded an Amtrak train in Albuquerque, New Mexico, traveling from Los Angeles to Chicago. Burbage caught the agents' attention, in part because he paid cash for a one-way ticket from L.A. to Philadelphia. Burbage, 365 F.3d at 1176; April 8, 2003 trial transcript, at p. 85. (02cr1813). The purchase of a one-way ticket with cash on the day of travel, while in itself benign behavior, is also consistent with conduct by drug traffickers who wish to avoid a paper trail of their ticket purchase. Moreover, Los Angeles is know to be a "drug importation" city and Philadelphia a "drug distribution" city. Agent Jarrell Wayne Perry approached Burbage and identified himself as a law enforcement officer. He asked if he could speak to Burbage. Burbage assented. Feb. 12, 2003 transcript of suppression hearing, at p. 40; April 8, 2003 trial, at p. 88, 140 (02cr1813.) Perry then spoke to Burbage, identified himself as a DEA agent, inquired about Burbage's travel, and asked Burbage if he was traveling with any luggage. Burbage, 365 F.3d at 1176; Feb. 12, 2003 suppression hearing, at p. 11. Burbage said that he was not carrying any luggage. Agent Perry left the train to look in the area of the train where checked luggage is maintained. He did not find any luggage for Burbage, and Perry then reboarded, at which time he noticed a grey and black backpack in the overhead luggage compartment above Burbage's seat. Feb. 12, 2003 hearing, at pp. 14-17, Apr. 8, 2003 trial, at p. 97-98. Perry removed the bag from the

overhead luggage compartment and asked Burbage if the backpack was his. Burbage said "No." Id. at p. 18, 45; Apr. 8, 2003 trial, at p. 99, 148. Perry held the backpack up in the air and asked all other car passengers if it belonged to any of them. No passenger claimed ownership. A few moments later, Perry again asked Burbage if the bag was his, and Burbage again denied ownership of the backpack. Id. at p. 19. At one point, Burbage told Perry that the backpack belonged to a person who was riding beside him on the train. Apr. 8, 2003 trial at p. 149, 159.[2]

6. Burbage did, however, tell Perry he owned a green portfolio or folder located inside the backpack that Perry had removed from the overhead area. Id. at 20, 46; Apr. 8, 2003 trial at p. 100, 151. Perry asked for permission to search the portfolio and Burbage consented. Apr. 8, 2003 trial, at p. 151. There was a dispute as to whether Perry unzipped the backpack at that point or whether Burbage unzipped the backpack. Burbage, 365 F.3d at 1176; Feb. 12, 2003 hearing, at pp. 20-22, 46. Burbage never claimed ownership of the backpack, as a whole, during the encounter with agents on the train. Feb. 12, 2003 hearing, at p. 56. To the contrary, he denied it was his.

7. Agent Perry testified at the suppression hearing and during trial that when he picked up the backpack, it felt overly heavy for its size. Feb. 12, 2003 hearing, at p. 24; Apr. 8, 2003 trial, at p. 99. Upon a search of the backpack, which was deemed abandoned, agents found brick-like objects wrapped in duct tape inside the backpack that field-tested positive for cocaine. Burbage, 365 F.3d at 1176-77; Apr. 8, 2003 trial, at pp. 108-09. Burbage was arrested.

---

[2]During the April 8, 2003 trial proceedings, defense counsel informed the Court during a bench conference that he was in a precarious position because his client was directing counsel to ask questions that counsel believed to be unethical and misleading (with respect to the fictitious person who Burbage, at one point, claimed had been seated next to him and owned the backpack). Defense counsel stated to the court that he had two choices, either counsel could commit something he believed to be a violation of the Code of Professional Conduct or permit Burbage to ask his own questions of the witness. Apr. 8, 2003 trial, at p. 159. The Court advised defense counsel to tell Burbage that he would not ask the questions that Burbage instructed counsel to ask (regarding the fictitious person). Id., at p. 160.

4

8. Burbage admitted during the hearing that he was not telling Agent Perry the truth when he denied ownership of the backpack. Feb. 12, 2003 hearing, at p. 49. He further conceded that the backpack was his, he knew it contained cocaine, and he had brought the bag with him from L.A. Id. at p. 51. Burbage stated during the suppression hearing that he had not wanted to claim the backpack because he was afraid since he knew drugs were in the backpack.

9. At the suppression hearing, Burbage's attorney argued that the government was claiming either that the search was consensual or alternatively that Burbage had abandoned the backpack and had no legitimate expectation of privacy in the backpack. Id. at p. 63. Defense counsel argued that the search was not consensual and furthermore that Burbage had not abandoned the bag since he claimed property inside the backpack. Id. at 65.

10. After hearing testimony and argument during the suppression hearing, the trial court determined that the backpack was abandoned after Perry asked Burbage and other passengers if the backpack belonged to anyone and no one claimed it. Id. at 66, 69-71. The court found Burbage had removed his portfolio from the backpack and ruled "everything to be consensual." Burbage, 365 F.3d at 1177. Thus, the court denied the motion to suppress.

11. On April 8, 2003, the case proceeded to trial and Burbage was convicted by a jury. Id. at 1177. On August 11, 2003, the trial court remanded Burbage to the custody of the Attorney General to be imprisoned for a total term of 130 months. August 11, 2003 Sentencing Transcript, at p. 17. An amended judgment was entered August 13, 2003. [Doc. Nos. 93, 94 in 02cr1813.]

12. Burbage filed a timely appeal on August 13, 2003. [Doc. No. 95 in 02cr1813.] On April 27, 2004, the Tenth Circuit entered a decision upholding the district court's determination of the motion to suppress, along with Burbage's conviction and sentence. Burbage, 365 F.3d 1174.

On July 8, 2004, a request for rehearing *en banc* was denied.  On November 15, 2004, Burbage's writ for certiorari was denied.  543 U.S. 993 (2004).

  13. On November 17, 2005, Burbage filed the § 2255 petition.  The government makes no argument as to the timeliness of the petition.[3]

## **Analysis**

  14. In Burbage's direct appeal, he expressly argued that the trial court committed clear error in holding that the backpack was abandoned based on Burbage's assertions to the DEA Agent that the backpack contained a portfolio belonging to Burbage.  Burbage's appellate brief, 2003 WL 23758190 (Dec. 1, 2003).  He also argued on appeal that the court erred in deciding the voluntary consent issue, specifically with respect to the determination of who (the agent or Burbage) actually opened the backpack and removed the portfolio.  Id. at *2, *14-15.  Based on his arguments, Burbage asserted that the motion to suppress was improperly denied.

  15. As stated previously, the Tenth Circuit rejected Burbage's arguments on appeal.  Burbage, 365 F.3d 1174.  The Court reasoned, in part, that by "affirmatively denying to Perry that he owned the backpack, Defendant lost any objectively reasonable expectation of privacy in the backpack as a whole."  Id. at 1178.  The Court acknowledged the "wrinkle" that Burbage attempted to bring into the case, i.e., his claimed ownership of only one object within the backpack.  Id. at 1179.  However, the Court was unpersuaded by Burbage's ploy.  "Defendant's property and privacy interests in the portfolio could be, and were, fully protected by simply delivering it to him without inspection of its contents.  He had no objectively reasonable expectation of privacy in the remainder

---

[3] In its response, the government notes that the Court found Burbage certified that he mailed his § 2255 motion on November 14, 2005 and that the document was postmarked November 15, 2005.  [Doc. No. 5, pp. 2-3.]

6

of the backpack's contents." Id.  Because the Tenth Circuit found the trial court had correctly determined the backpack was abandoned, it did not proceed to address Burbage's arguments regarding voluntary consent to search the backpack or who opened the backpack.  Id.  The Tenth Circuit affirmed the judgment below.

16. It is well-settled law that Burbage may not re-visit issues that were already raised on direct appeal and decided adversely to him.  "Fourth Amendment violations are not reviewable in a § 2255 motion when the federal prisoner has had a full and fair opportunity to litigate the Fourth Amendment claim at trial and present issues on direct appeal."  United States v. Cook, 997 F.2d 1312, 1317 (10th Cir. 1993).  "Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255."  United States v. Prichard, 875 F.2d 789, 791 (10th Cir. 1989).  *See also* United States v. Walters, 163 Fed. Appx. 674, 677-678 (10th Cir. 2006) (*quoting* Prichard, 875 F.2d at 791); United States v. Hughes, 2006 WL 1675928 at *2 (D. Kan. June 15, 2006) ("[c]laims raised and decided on direct appeal, . . . may not be reasserted in a § 2255 motion").

17. In his § 2255 motion, Burbage raises the same issues concerning alleged Fourth Amendment violations, e.g., denial of the motion to suppress, abandonment of ownership of the backpack, voluntary consent to the search, that were presented to the Tenth Circuit and rejected.  It is clear that Burbage had a "full and fair opportunity" to litigate the Fourth Amendment claims during the suppression hearing, at trial and on direct appeal.  Moreover, Burbage presents no evidence, nor could he, that an intervening change in Tenth Circuit law occurred that might affect the rulings on his appeal.  The Court determines that Burbage may not relitigate the Fourth Amendment issues in a § 2255 motion.  Thus, the Court recommends they be dismissed, with prejudice.

18.     Burbage's remaining claims concern allegations of prosecutorial misconduct. Burbage argues that the prosecution either presenting perjured testimony to the jury during Burbage's trial or improperly presented what Burbage characterizes as contrary theories during the criminal proceedings. The prosecutorial misconduct claims were not raised on direct appeal, even though nothing prevented Burbage from bringing such claims.

19.     "Review under § 2255 is not an alternative to appellate review for claims that could have been presented on direct appeal but were not." United States v. Magleby, 420 F.3d 1136, 1139 (10th Cir. 2005), *cert. denied,* 126 S.Ct. 1879 (2006). Consequently, if a defendant fails to raise an issue at trial or on direct appeal, he faces a procedural bar to raising that issue on collateral review. United States v. Barajas-Diaz, 313 F.3d 1242, 1245 (10th Cir. 2002). "To overcome the procedural bar, the movant must establish either good cause for not raising the issue earlier and resulting actual prejudice to his defense from the court's failure to consider this claim, or a fundamental miscarriage of justice from not considering the claim." Hughes, 2006 WL 1675928 at *2 (*citing* United States v. Cervini, 379 F.3d 987, 990 (10th Cir. 2004), *cert. denied*, 544 U.S. 904 (2005)).

20.     Here, Burbage did not raise the prosecutorial claims on direct appeal. In his amended petition or reply [Doc. No. 8], Burbage explained that his appellate attorney refused to argue that the prosecution relied on perjured testimony during the trial "because she felt it was no [sic] perjury in the case." He also noted that his appellate counsel "stated roughly that there was no prosecutorial misconduct, and their [sic] was not contradictory theories during stages at trial." [Doc. No. 8.] Burbage further argues that the "government stylishly writes away from the true reality of this claim of perjury." The alleged perjury concerns Burbage's assertions about who opened the backpack – Burbage or Perry. However, the Tenth Circuit concluded it need not reach this question having

found that the backpack was abandoned based on Burbage's undisputed denial of ownership of the backpack during the Amtrak encounter.

21.     Even if Burbage could demonstrate good cause for not raising his claims of prosecutorial misconduct earlier, there is no evidence presented to show that there was actual prejudice to Burbage as a result of the Court's failure to consider the issue.  In addition, Burbage cannot demonstrate a fundamental miscarriage of justice, particularly here, where Burbage does not and cannot raise a claim of actual innocence.  The Court, therefore, recommends that the claims of prosecutorial misconduct be dismissed, with prejudice.

## Recommended Disposition

That Burbage's § 2255 motion [Doc. No. 1] be denied and that the case be dismissed with prejudice.

Lorenzo F. Garcia
Chief United States Magistrate Judge